UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARC HOWARD BERGER,

Defendant.

Case No. 17-cr-00491-RS-1

**ORDER REGARDING DEFENSE MOTIONS FOR WITNESS-IMMUNITY, RULE 15 DEPOSITION, DISCOVERY AND DISCLOSURE**

## I. INTRODUCTION

Defendant Marc Berger is charged with three counts of aiding and assisting in the preparation of a false tax return in violation of 26 U.S.C. § 7206(2). His trial is set to begin on June 25, 2018. Berger has filed three motions that are pending. For the reasons explained below, Berger's Rule 15 motion seeking authorization to depose Defendant G. Steven Burrill is granted. His motions for (a) defense-witness immunity and (b) a court order addressing various discovery and disclosure issues are granted in part and denied in part.

## II. BACKGROUND

The charges against Berger arise from his role as a tax partner at accounting firm Burr Pilger Mayer ("BPM") where he served as the engagement partner responsible for overseeing the preparation and signing of the tax returns of G. Steven Burrill, Kelli Burrill, and a number of Mr. Burrill's wholly-owned eponymous entities. Among those entities was Burrill Capital Management LLC ("Burrill Capital"), which served as the management company of Burrill Life Sciences Capital Fund III ("Fund III"), a venture capital fund in the biotech industry.

In September 2017, a grand jury returned an indictment in which both Mr. Burrill and Berger were named as defendants. Burrill was charged with wire and securities fraud relating to his directing of cash transfers from Fund III to Burrill Capital that exceeded the regular management fees to which Burrill Capital was entitled from 2009 through 2013. He was also charged with tax evasion for failing to declare the same transfers as income. In December 2017, Burrill pleaded guilty to one count of Investment-Advisor fraud and one count of tax evasion, admitting in his written plea agreement and at his oral plea colloquy that he improperly took $18 million from Fund III. Currently, Burrill is not scheduled to be sentenced until after Berger's trial has concluded.

The indictment charges Berger with three counts of aiding and assisting in the preparation of the 2011, 2012, and 2013 tax returns which falsely reported Burrill's income as less than zero. The case against Berger turns on whether he knew the improper transfers from Fund III were prepaid management fees that should have been classified as deferred revenue and included as income on Burrill's tax returns, or, whether he had a good faith belief the transfers were loans Burrill was personally liable to repay and thus not taxable income.

The jury's ability to determine what exactly Berger knew will likely depend in part on the testimony of individuals at both BPM and Burrill Capital who were privy to the discussions regarding treatment of the cash transfers. One such individual is Burrill himself. Two other potential witnesses from Burrill Capital are the firm's former Chief Legal Officer Victor Hebert, with whom the government has entered a non-prosecution agreement, and the firm's former Controller (hereafter "Government Two").

From BPM, Berger asserts that at least one individual (hereafter "Witness A") who worked directly on the Burrill tax returns would offer testimony relevant to his *mens rea* (or lack thereof). He further contends that two other groups of BPM witnesses—(1) individuals who worked on the Burrill returns under his and Witness A's supervision; and (2) individuals who received an email he sent regarding treatment of the cash transfers—could offer additional relevant testimony. None of the BPM Witnesses has been either indicted or offered immunity. Witness A has stated that if

she is not given immunity she will invoke her Fifth Amendment right against self-incrimination and refuse to testify.

In addition to witness testimony, this case involves a large amount of documentary evidence. Over the past six months, the government has produced multiple rounds of electronic discovery that together amount to over four million pages/images. Various issues have arisen related to this voluminous discovery which will be discussed in greater detail below.

### III. DISCUSSION

**A. Motion for Defense-Witness Immunity**

Berger moves for an order compelling the government to grant immunity to certain defense witnesses or, alternatively, for dismissal of the indictment. 18 U.S.C. § 6002 empowers federal prosecutors to immunize testifying witnesses, but it does not require them to do so. *See United States v. Hakimian,* 2010 WL 2673407, at *5 (N.D. Cal. July 1, 2010). A court may compel the government to grant use immunity to a witness only when a defendant shows that the witness's testimony is relevant and that the prosecution: (1) intentionally caused the witness to invoke the Fifth Amendment right against self-incrimination with the purpose of distorting the fact-finding process; or (2) granted immunity to a government witness, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government witness, with the effect of so distorting the fact-finding process that the defendant is denied his or her right to a fundamentally fair trial. *United States v. Straub*, 538 F.3d at 1147, 1162 (9th Cir. 2008).

Here, Berger does not assert the government has committed prosecutorial misconduct by purposefully causing defense witnesses to invoke their Fifth Amendment rights. *See* Reply at 4.[1] Rather, he proceeds under prong two of the test outlined in *Straub*, arguing the government's actions, irrespective of motive, have had the effect of distorting the fact-finding process.

---

[1] Berger's initial motion suggested "the government's conduct implicated both routes to immunity described in *Straub*." *See* Mot. at 14. Berger's reply and his counsel's comments at oral argument, however, indicate he now only advances an argument for compelling immunity via the second route and does not argue the government has acted in bad faith.

Specifically, Berger asserts the government has immunized or will immunize two witnesses (Hebert and Government Two) whose testimony will provide the factual basis on which the government will ask the jury to find that Berger acted willfully—i.e., that he knew the cash transfers from Fund III were not properly characterized as loans. At the same time, the government has refused to immunize witnesses from BPM whose testimony, Berger claims, will directly contradict the testimony of Hebert and Government Two. The contradictory witnesses proffered by Berger are analyzed below.

### i. Witness A

Witness A is a BPM tax partner who worked collaboratively with Berger in preparing Burrill's returns. According to Berger, she managed day-to-day work on the matter and was the point person for communication with Burrill's employees. In prior grand jury testimony, Witness A has stated repeatedly that she believed the Fund III transfers were loans, not income. She has testified that she participated in conversations with Berger and Government Two about the nature of the transfers. She has also testified that the BPM team did not initially suggest characterizing the transfers as loans but rather recommended that treatment only after questioning Government Two about the nature of the transactions.

As an initial matter, Witness A's testimony is undeniably relevant. It also appears to be sufficiently contradictory to the anticipated testimony of Hebert, the government's immunized witness. The Ninth Circuit has stated that "a witness directly contradicts another witness if their respective testimonies cannot simultaneously be true, although in this context the proffered defense testimony need only support (as opposed to compel) a finding by the jury that it was directly contradictory." *United States v. Wilkes*, 744 F.3d 1101, 1106 (9th Cir. 2014) (quoting *Straub*, 538 F.3d at 1163) (internal quotation marks omitted).

Here, Berger anticipates—and the government does not dispute—that Hebert will testify Berger suggested characterizing the Fund III cash transfers as a loan on his own initiative rather than at the suggestion of Burrill, Hebert, or Government Two. *See* Mot. at 17 (citing Kane Decl., Ex. 21 at ¶ 41). Based on this testimony, Berger argues, the government will ask the jury to infer

that Berger knew Burrill had a significant tax liability and suggested the loan characterization to shield Burrill unlawfully from that liability.[2] By contrast, Witness A will testify that she and Berger questioned Hebert and Government Two about the nature of the "deferred revenue" liability and, only after being told that Burrill was personally liable, concluded the transfers should be treated as a loan. Witness A's testimony will therefore support an inference that Berger approved the loan characterization in good faith reliance on representations made to him by Burrill and his employees.

The differing accounts offered by Hebert and Witness A of the same factual circumstances are sufficiently contradictory that allowing only Hebert's account to be put before the jury would distort the fact-finding process in a way that jeopardizes Berger's right to a fair trial. Additionally, it is clear that failure to provide Witness A with immunity will deprive Berger of her testimony. She has already stated that unless she is granted immunity she will assert her Fifth Amendment right against self-incrimination and refuse to testify. For all of the above reasons, Berger's motion for defense-witness immunity is granted as to Witness A.[3]

### ii. Other BPM Witnesses

In addition to Witness A, Berger seeks immunity for two additional groups of BPM witnesses. The first group—the "accounting witnesses"—includes individuals who were staffed on the Burrill matter and worked at the direction of Witness A and, by extension, Berger. The second group—the "email witnesses"—includes individuals with whom Berger discussed the tax

---

[2] Berger argues the government is likely to grant immunity to Government Two so that she can testify to similar effect. Because Witness A's testimony sufficiently contradicts Hebert's anticipated testimony, the issue of whether Government Two will also be granted immunity need not be reached.

[3] As discussed at oral argument, the Ninth Circuit has outlined three options for how the government may proceed in light of this order. *Straub*, 538 F.3d at 1161. First, it may grant Witness A use immunity. Second, it may proceed without offering the testimony of the immunized witnesses with whom Witness A's testimony would conflict (i.e., Hebert and Government Two, if she is immunized). Finally, the government may dismiss the indictment. As noted in *Straub*, "[t]hese three options give the prosecution several choices and provide some mitigation for the intrusion on prosecutorial discretion that compelled use immunity causes." *Id.*

treatment of the cash transfers orally or by email. Berger argues individuals from both groups can provide testimony regarding his words and actions in connection with work on the Berger matter which supports finding that he did not have the requisite *mens rea* to be held criminally liable.

Berger's case for granting the additional BPM witnesses immunity comes up short on two fronts. First, it is not clear any of the testimony offered by the additional BPM witnesses would directly contradict the testimony of Hebert or Government Two.[4] Moreover, to the extent the testimony is contradictory, it is not clear it would cover factual circumstances not already addressed by Witness A. Given, as discussed above, that Witness A will be granted immunity, additional contradictory testimony on topics she will already be discussing is irrelevant by virtue of being cumulative. *See Straub*, 538 F.3d at 1158 (noting that cumulative testimony is not relevant for purposes of compelling use immunity) (citing *United States v. Brutzman*, 731 F.2d 1449, 1452 (9th Cir. 1984)).

Second, unlike Witness A, none of the additional BPM witnesses has stated an intent to invoke his or her Fifth Amendment right against self-incrimination to avoid testifying.[5] While Berger asserts, and the government does not contest, that all of these individuals theoretically remain subject to prosecution, the threat for most of them (especially the email witnesses) is attenuated. Under these circumstances, Berger has not shown that failing to compel immunity for BPM witnesses other than Witness A will so distort the fact-finding process that it denies him a fundamentally fair trial. Accordingly, his motion for defense-witness immunity is denied as to all witnesses other than Witness A.

**B. Motion for Rule 15 Deposition**

Berger moves for an order authorizing the parties to take the deposition of Burrill pursuant

---

[4] Berger acknowledges as much in his motion stating that "the testimony of other BPM partners does not contradict the immunized witness testimony head-on" in the same way as does the testimony of Witness A. *See* Mot. at 18-19.

[5] In fact, at oral argument, Berger's counsel represented that the "email witnesses" have definitively said they will not invoke their Fifth Amendment rights and will testify if called. Berger's counsel has yet to receive an answer on this topic from the "accounting witnesses."

to Federal Rule of Criminal Procedure 15. Rule 15 provides in pertinent part that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). "The district court retains broad discretion in granting a Rule 15(a) motion, and considers the particular circumstances of each case to determine whether the exceptional circumstances requirement has been satisfied." *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir.1998) (internal citation and quotation marks omitted). There are no specific prerequisites or factors a district court must consider. Rule 15(a) does not require, for instance, any conclusive showing of "unavailability" or "material testimony." *Id.* "Rule 15(a) only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial." *Id.*

Here, exceptional circumstances exist which justify providing a procedural mechanism for securing Burrill's testimony. First, the testimony is clearly relevant. Berger anticipates Burrill will testify to various facts tending to corroborate Berger's claimed understanding that the cash transfers at issue were personal loans. These facts include that: (a) Burrill routinely characterized the transfers as "borrowing" and loans for which he had personal liability and that Hebert and Government Two shared this characterization with Berger; and (b) Burrill was told that Berger had recommended executing a promissory note to document that the transfers were loans in reliance on how Hebert and Government Two characterized the transfers. The government does not dispute that this testimony would be material and favorable to Berger.

Second, the somewhat unusual procedural posture of this case makes it difficult for Berger to ensure he will not be deprived of Burrill's testimony. Burrill currently indicates he is willing to waive his Fifth Amendment right against self-incrimination and testify. The fact that he will not be sentenced until *after* the trial, however, means he will retain the ability to change his mind. *See United States v. Paris*, 827 F.2d 395, 399, 399 n.1 (9th Cir 1987) ("A convicted but unsentenced defendant retains his Fifth Amendment rights" including the "right not to testify until after sentencing.") The government correctly notes that, generally, exceptional circumstances do not

exist when a witness has stated a willingness to testify. Yet this rule is not hard and fast and courts have made exceptions when a witness's change of heart would leave his or her proponent with no recourse. *See, e.g., United States v. Drogoul*, 1 F.3d 1546, 1557–58 (11th Cir. 1993) (permitting the government to depose six Italian witnesses who had stated their intent to testify but who were "beyond the subpoena power of the federal courts and could, at a later date, refuse to testify").

Finally, the government has identified no meaningful ways in which it would be prejudiced or unfairly burdened by permitting Burrill's deposition. This is not particularly surprising given that Burrill has stated he is willing to be deposed and will make himself available, in the Northern District of California, at a time that is mutually convenient for both parties.

In light of the above circumstances, the risk that Berger might be deprived of Burrill's testimony, even if it is not extreme, makes it in the interest of justice to provide a mechanism for preserving that testimony. Accordingly, Berger's motion for a Rule 15 deposition is granted.

**C. Motion for Order Regarding Discovery and Disclosure Issues**

Federal Rule of Criminal Procedure 2 requires the Federal Rules be interpreted to provide for the "just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Rule 16 identifies particular materials the government must disclose to the defense upon request including documents and objects in its possession, custody, or control, where: "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. Proc. 16(a)(1)(e). Rule 16(d) provides that, in order to regulate discovery, the Court may enter any order that is just under the circumstances.[6]

In addition to the powers conferred by the federal rules, a district court has inherent

---

[6] Local Criminal Rule 16–1 sets forth additional procedures for disclosure and discovery in criminal matters noting that the assigned Judge or Magistrate Judge may set a schedule for disclosure of information required by Rule 16 or any other applicable rule, statute or case authority. A party, after conferring with opposing counsel, may make a motion pursuant to Criminal Local Rules 47–1 and 47–2 to "impose a schedule for such disclosure."

ORDER RE PENDING DEFENSE MOTIONS
CASE NO. 17-cr-00491-RS-1

8

authority "to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *See United States v. W.R. Grace*, 526 F.3d 499, 508–09 (9th Cir. 2008).[7]

    Defendant Berger moves the court for an order addressing various discovery and disclosure issues. At oral argument, Berger's counsel represented that one of the issues raised (involving review of emails potentially subject to attorney client privilege) has been addressed. The remaining unresolved issues appear to fall into two categories. The first involves technical issues with the form and accessibility of the electronic discovery provided by the government. The second involves the volume of discovery the government has produced. In short, Berger seeks greater guidance from the government regarding which of the documents produced are relevant so that he can more efficiently review them in preparation for trial.[8]

    With regard to technical issues, the government appears to have acted in good faith in attempting promptly to address all issues brought to its attention by the defense. Nonetheless, in an abundance of caution, the government is hereby ordered to make members of its IT team available to meet with Berger's discovery vendor so as to resolve any outstanding issues and facilitate access to, and the ability to search through, all of the electronic discovery as soon as possible.

---

[7] In *Grace*, the Ninth Circuit upheld a district court's order that required the Government to disclose a final witness list by a certain deadline, and limited its witnesses to those on the list. It relied on the "well established principle that district courts have inherent power to control their dockets" and the fact that "judges exercise substantial discretion over what happens inside the courtroom." *Id*. at 509 (quotations and citations omitted).

[8] Berger additionally asks the Court to require the government to produce *Brady/Giglio* material. Due process imposes an "inescapable" duty on the prosecutor "to disclose known, favorable evidence rising to a material level of importance." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963). Favorable evidence includes both exculpatory and impeachment material that is relevant either to guilt or punishment. *See United States v. Bagley*, 473 U.S. 667, 674–76 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The government's duty to produce any *Brady/Giglio* materials is a continuing duty; it applies with or without a court order. *See Kyles*, 514 U.S. at 438. Given that no evidence in the record indicates the government has failed to comply with this duty, a specific disclosure order is not warranted.

With regard to additional guidance, the government is not required to provide a roadmap to the discovery it has produced at the level of detail requested by the defense. Under the circumstances, however, advancing some of the regular deadlines for pretrial disclosures is appropriate. Accordingly, the government is hereby ordered to identify: (a) the documents it intends to use in its case-in-chief; and (b) any witnesses it intends to call, by no later than May 11, 2018 (one month in advance of the pretrial conference). The government will not automatically be precluded from using any documents or witnesses identified after the deadline set forth in this order. However, it must be prepared to show that, in the exercise of due diligence, it could not have identified those documents or witnesses sooner, there is good cause for the belated identification, and Berger would not be unduly prejudiced by the belated identification.

## IV. CONCLUSION

The Court orders as follows:

1) Defendant Berger's motion for defense-witness immunity is granted as to Witness A and denied as to all other witnesses.

2) Defendant Berger's motion for a Rule 15 deposition is granted. Counsel for the parties and for Mr. Burrill shall agree on the place and time for the deposition.

3) Defendant Berger's motion for an order requiring the government to identify documents and provide *Brady/Giglio* disclosures is granted in part and denied in part.

4) The government shall make members of its IT team available to meet with Berger's discovery vendor so as to resolve any outstanding technical issues and facilitate access to all of the electronic discovery as soon as possible.

5) By no later than May 11, 2018, the government shall identify: (a) the documents it intends to use in its case-in-chief; and (b) any witnesses it intends to call.

**IT IS SO ORDERED**.

Dated: March 30, 2018

RICHARD SEEBORG
United States District Judge